## CASE NO. 24-40815

## IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

### LAURALEE RICHMOND,
**Plaintiff-Appellant,**
v.

### TEAM ONE CONTRACT SERVICES, LLC doing business as TEAMONE LOGISTICS,
**Defendant-Appellee.**

### On Appeal from
United States District Court for the Southern District of Texas
Case No. 3:22-cv-282
The Honorable Andrew M. Edison

# Brief of Appellee Team One Contract Services, LLC doing business as TeamOne Logistics

**Hunter Johnson**
Texas Bar No. 10753900
hjohnson@constangy.com

**CONSTANGY, BROOKS, SMITH & PROHPETE, LLP**
1201 Elm Street, Suite 2550
Dallas, Texas 75270
(214) 646-8625
(972) 865-4791(facsimile)

**Attorneys for Team One Contract Services, LLC
doing business as TeamOne Logistics**

## CERTIFICATE OF INTERESTED PERSONS

1.     Lauralee Richmond, Plaintiff-Appellant v. Team One Contract Services, LLC doing business as TeamOne Logistics, Defendant-Appellee, Appeal No. 24-40815

2.     The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | Lauralee Richmond |
| Counsel for Appellant: | Ahad Khan<br>Ahad Khan Law |
| Appellee: | Team One Contract Services, LLC<br>doing business as TeamOne Logistics |
| Counsel for Appellee: | Hunter Johnson<br>Constangy Brooks Smith & Prophete, LLP |

*/s/ Hunter Johnson*
**HUNTER JOHNSON**

## STATEMENT REGARDING ORAL ARGUMENT

TeamOne does not request oral argument. This appeal presents issues of established law. The District Court's Order Granting TeamOne's Motion for Summary Judgment thoroughly sets out the issues and the facts: specifically, that Appellant's claims of discrimination under Title VII fail to set forth a *prima facie* case and, even if they did, she did not demonstrate pretext or otherwise meet her burden to show discrimination.

Consequently, oral argument will not materially assist the Court in its disposition of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

TABLE OF AUTHORITIES ................................................................. vi

COUNTERSTATEMENT OF THE ISSUES ........................................................1

STATEMENT OF FACTS ................................................................2

   A. TeamOne is an Equal Opportunity Employer ................................................2

   B. Richmond's Employment with TeamOne ................................................2

   C. Written Warning Issues to Richmond ................................................8

   D. Report of Falsification of Safety Records ................................................10

   E. The Investigation ................................................11

   F. March 10, 2021, Meeting with Richmond................................................13

SUMMARY OF THE ARGUMENT ................................................16

ARGUMENT ................................................18

   I. THE DISTRICT COURT CORRECTLY HELD THAT TEAMONE DID
     NOT DISCRIMINATE AGAINST RICHMOND BASED ON HER
     PREGNANCY ................................................18

   A. The Pregnancy Discrimination Act ................................................18
   B. Burden-Shifting in Title VII Discrimination Case................................................19
   C. The District Court Correctly Determined That Appellant Failed To Make
     Out A Prima Facie Case of Pregnancy Discrimination ................................................20

     1. There is no evidence that a non-pregnant employee replaced
       Richmond................................................20
     2. Bruce Pate is not a proper comparator. ................................................21

   II. RICHMOND FAILED TO REBUT TEAMONE'S LEGITIMATE NON-
     DISCRIMINATORY REASON FOR HER TERMINATION................................................23

CONCLUSION AND PRAYER ................................................31

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULES ..........................32

CERTIFICATE OF SERVICE ................................................................................33

# TABLE OF AUTHORITIES

**Cases**

Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.,
309 F.3d 433 (7th Cir. 2002)........................................................... 17, 29

Alkhawaldeh v. Dow Chem. Co.,
851 F.3d 422 (2017) .................................................................. 21, 22

Brockie v. Ameripath, Inc.,
2007 WL 1187984 (N.D. Tex. Apr. 23, 2007) .....................................24

Carmona v. DeJoy,
No. 22-20064, 2022 WL 16836978 (5th Cir. Nov. 9, 2022) ......................... 18, 19

Crivelli v. Montgomery Cnty. Emergency Servs. Dist. No. 7,
No. 22-20312, 2023 WL 2823065 (5th Cir. Apr. 7, 2023)...................................30

Davis v. Dail. Area Rapid Transit, 383 F.3d 309 (5th Cir. 2004).........................20

De Anda v. St. Joseph Hosp., 671 F.2d 850 (5th Cir. 1982) ....................................29

Deines v. Texas Dept. of Protective and Regulatory Services, 164 F.3d 277 (5th Cir. 1999) ..............................................................................................29

Fairchild v. All American Check Cashing, Inc.,
815 F.3d 959 (5th Cir. 2016) ..................................................................18

Fowler v. Smith,
68 F.3d 124 (5th Cir.1995)...................................................................22

Gotch v. Neustrom,
2013 WL 312372 (W.D. La. 2013).........................................................19

Jackson v. Watkins,
619 F.3d 463 (5th Cir. 2010).................................................................29

Kraft v. Univ. of Tex. Med. Branch,
775 F. App'x 159 (5th Cir. 2019) .........................................................30

Lemaire v. La. Dept. of Transp. & Dev.,
   480 F.3d 383 (5th Cir. 2007)........................................................ 24, 30

Little v. Republic Refining Co.,
   924 F.2d 93 (5th Cir. 1991)........................................................ 29, 30

Mayberry v. Vought Aircraft Co.,
   55 F.3d 1086 (5th Cir. 1995).............................................................29

McDonnell Douglas Corp. v. Green,
   411 U.S. 792 (1973).........................................................................19

Morris v. Town of Indep.,
   827 F.3d 396 (5th Cir. 2016).............................................................20

Perez v. Region 20 Education Service Center,
   307 F.3d 318 (5th Cir. 2002).............................................................29

Ragas v. Tenn. Gas Pipeline Co.,
   136 F.3d 455 (5th Cir. 1998)...................................................... 17, 29

Raytheon Co. v. Hernandez,
   540 U.S. 44, 124 S.Ct. 513 (2003).....................................................19

Reeves v. Sanderson Plumbing Products, Inc.,
   530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)..............24

Roberson-King v. La. Workforce Comm'n,
   904 F.3d 377 (5th Cir. 2018).............................................................30

Stout v. Baxter Healthcare Corp.,
   282 F.3d 856 (5th Cir. 2002) ............................................................18

United States v. del Carpio Frescas,
   932 F.3d 324 (5th Cir. 2019)...................................................... 17, 29

Vincent v. Coll. of the Mainland,
   703 F. App'x 233 (5th Cir. 2017).......................................................21

Wallace v. Methodist Hosp. Sys.,
   271 F.3d 212 (5th Cir. 2001) ...................................................................19

Walton v. Bisco Industries, Inc.,
   119 F.3d 368 (5th Cir. 1993)...................................................................29

Watkins v. Tregre,
   997 F.3d 275 (5th Cir. 2021).................................................................23

Young v. United Parcel Service, Inc.,
   135 S.Ct. 1338 (2015)............................................................................19

## **Statutes**

42 U.S.C. § 2000e(k) ...............................................................................18

## **COUNTERSTATEMENT OF THE ISSUES**

Whether the District Court properly granted TeamOne's Motion for Summary Judgment as to Richmond's claim of pregnancy discrimination.

## STATEMENT OF THE CASE

### A.    TeamOne is an Equal Opportunity Employer

TeamOne provides qualified, career-oriented employees to service the specific needs of its customers, providing its clients with strategic solutions involving their workforce, dedicated fleet, or warehousing operations. ROA.398. It is an equal employment opportunity employer that prohibits discrimination against employees on the basis of their sex, pregnancy, or any other protected characteristic.  ROA.398-399, 185-187.

TeamOne has a contract with UPS Logistics ("UPS") to provide dedicated fleet services to support UPS' client Chiquita at its facility in Freeport, Texas. ROA.399, 106, 407.  TeamOne is responsible for hiring and managing truck drivers for that contract, and all drivers and associated employees which service that contract are TeamOne employees. ROA.106, 399.  Any proposed changes to safety protocol were required to be submitted in writing and approved by TeamOne and UPS.  ROA.150, 408.

### B.    Richmond's Employment with TeamOne

Richmond began working for TeamOne on July 29, 2019, as an Operations Manager at TeamOne's location in Freeport, Texas. ROA.118, 399, 407. In addition to her salary, she was eligible for a bonus, part of which was based upon the safety record of the drivers she supervised. ROA.399, 118, 166.  She reported to Mark

Messmer, Vice President of Human Resources, and Patsy White, Director of Safety and Compliance.  ROA.106, 399, 408.

In connection with her hire, Richmond was trained on Team One's policies and procedures, including its safety rules, and received a copy of the Employee Handbook containing the aforementioned policies. ROA.121, 179, 399.

Richmond was a TeamOne employee who reported to and was supervised by TeamOne management. She was not supervised, managed, or jointly employed by UPS. ROA.106, 116, 121, 399.   Richmond's primary duties as an Operations Manager included the direct management and supervision of a fleet of truck drivers and support staff, including ensuring compliance with all issues related to safety, OSHA, and DOT regulations. ROA.118-119, 408.

Safety is one of the Company's highest priorities. The Company regularly conducts training and maintains a library of training materials and forms online. In that regard, TeamOne conducts extensive training and requires that training modules be completed each month not only by the drivers, but also its managers. In addition, the Company has implemented a safety incentive program for its employees and maintains a library of training materials and forms online. ROA.120, 408.

Richmond was initially trained by the previous Operations Manager, Vera Rhame-Wise, who was retiring. Rhame-Wise continued working for TeamOne

approximately a month after Richmond was hired so that she could train her. Rhame-Wise was then available to Richmond by telephone for any further questions Richmond had. White was also available to answer any of Richmond's questions. ROA.123-124, 408.

To assist in its evaluation of the effectiveness of its safety training, the Company utilizes a fleet management software (Omnitracs) which collects information from Electronic Logging Devices (ELDs) provided to each driver. ROA.119, 409. These devices record the operation of the truck and is set to continuously identify improper driving habits or behaviors, such as "hard brakes," that can lead to accidents. Id. TeamOne uses the information provided by Omnitracs to assist in more effective driver coaching, reduce collision frequency, and lower fuel consumption and operational costs. Id. Reports are generated for the Company so that measures can be taken to correct any improper driving habits or behaviors through counseling or additional training. Id. TeamOne drivers are aware that the systems are in place and that they will be counseled and disciplined for unsafe behaviors reported on a system event report. For example, TeamOne's safety program requires that drivers with more than two "hard brakes" in a week be coached and counseled. Id.

As Operations Manager, it was Richmond's duty to oversee the safety training at the Freeport, Texas, facility. This included, among other things, conducting

weekly driver observations, monthly Comprehensive Health and Safety Process ("CHSP") meetings, and participating in weekly "Safety Action Plan" and quarterly safety meetings with TeamOne's corporate safety department. TeamOne's Safety Department conducts the weekly "Safety Action Plan" conference calls with its on-site managers to review safety related issues, including the review of reports generated by Omnitracs each week, driver observations conducted, and any other concerns. ROA.106, 118-120, 409.

Each Friday, the Safety Department sends the reports generated by Omnitracs to the Operations Managers. The following Monday afternoon, the Safety Department conducts the Safety Action Plan call to review the report with the Operations Manager. Coaching of the drivers and coaching documents are to be completed by the Operations Manager and forwarded to White and the Safety Department by Wednesday each week. ROA.410. In the spring of 2020, TeamOne began tracking "hard brakes." Each week Richmond was reminded during the safety meeting calls that she needed to submit the coaching documents for the drivers she supervised. Id.

Operations Managers are also provided a Safety Engagement Plan ("SEP") each year outlining Defendant's expectations and goals for its Operations Managers. It provides that driver observations and CHSP and Safety Meetings are the responsibility of not only the Operations Manager, but also the on-site

supervisor. ROA.124, 256, 410, 421-423. Specifically, the SEP notes: "Observations are REQUIRED weekly by every member of management. Any management team member without observations during the week will be counseled by the Operations Manager. Continued failure to perform observations will result in disciplinary action." ROA.124, 256, 410, 421-422. Driver observations, both off-site and on-road, are important tools when eliminating crashes and injuries, and management, including on-site supervisors, are required to perform observations periodically each week. ROA.119, 126, 410, 424-425.

In March 2020, Richmond and White discussed that there were specific TeamOne forms to be utilized for driver observations and that the observations had to be documented in a particular manner. On March 5, 2020, Richmond e-mailed White and attached an example of what she had been providing to Gerald Whisman, UPS National Account Manager. Richmond further stated that if White would send her the form she would like for her to use going forward, she would start utilizing it the following week. ROA.125, 267, 411, 427-428.

On March 9, 2020, White sent an e-mail to Richmond which stated, "Lauralee, [t]his is the form we discussed today – we will use this form to document the driver observations going forward." Attached to the e-mail was the TeamOne Observation Form. ROA.125-126, 280, 409. It is undisputed that Richmond did not use the TeamOne Observation Form that she was instructed to

use. ROA.125. It is also undisputed that Jennifer Zavala, Richmond's on-site supervisor, did not conduct any driver observations and that Richmond completed safety documentation that indicated that Zavala had performed weekly driver observations and referenced counseling with drivers. ROA.126.

On June 4, 2020, White reminded Richmond that she needed the second quarter date and agenda by the following day as she had requested in a safety call conducted on the previous Monday. Jeff Hudson, TeamOne COO, was copied on the e-mail. The following day, Hudson responded to Richmond that he needed her to make safety a priority, stating, "When a message like this comes across my desk, the message I receive is that it is not important to you. I hope that is not the case." ROA.395. With regard to that e-mail, Richmond testified that, "It was a slap on the wrist from Jeff Hudson…What he's saying is he wants me to comply with Patsy." ROA.145, 429-430.

Richmond testified that in or about November 2020, after she had informed TeamOne that she was pregnant, she became upset when she was required to terminate a driver she had hired because he did not have the required one (1) year driving experience. Messmer, knowing she was upset, called her, and asked, "Am I going to lose you over this." Richmond responded, "No, I'm pregnant. I'm not going anywhere now but do not see myself staying in the long-term. Richmond

testified that Messmer was concerned that "he was going to have to start shopping for the position." ROA.142-143.

### C. Written Warning Issues to Richmond

On November 6, 2020, White received an e-mail from Joseph Clevenger, a UPS driver trainer, stating he was having difficulty getting a response from Richmond concerning safety issues of TeamOne drivers, noting repeated "hours of service" violations and a driver with excessive "hard brakes." Despite weekly requests and reminders to Richmond, neither White nor the Safety Department had received any coaching documents from Richmond for drivers she supervised. At that time, sixty-six (66) hard brake violations had been reported by Omnitracs since March 2020, yet no coaching documentation had been submitted by Richmond. ROA.431-433, 411.

White called Richmond to discuss Clevenger's complaint and reminded her that that she needed to turn in her coaching documents. Richmond responded that she would. White advised Messmer and Jeff Hudson, TeamOne's Chief Operating Officer, of the issue. Hudson advised that if Richmond was not responding after repeated requests for coaching documentation, then they were to "take it to the next level. [Not] doing the required safety training and coaching will not be tolerated." ROA.431-433, 411-412, 400.

On Friday, November 20, 2020, White sent an e-mail to Richmond again

requesting coaching documents for drivers with more than two (2) "hard brake" violations in a week, noting that Richmond had indicated in several Safety Action Plan calls that she had the documents but had not had time to submit them. White attached a list of the drivers with violations and requested that she provide the coaching documentation by the following Monday afternoon. ROA.434-442, 412.

On November 30, 2020, White informed Messmer that Richmond provided only one coaching document for driver James Nichols, which was incomplete as it was missing the second page. No other coaching documents for the remaining 65 hard-brake violations of drivers under Richmond's supervision were submitted. Thereafter, Messmer spoke with Richmond and informed her that he would be administering discipline to her for failure to submit documentation of coaching regarding sixty-five (65) hard brake violations. Richmond told Messmer to "do what you need to do." ROA.443-444, 445-446, 412, 400.

On December 2, 2020, White issued Richmond a written warning for her failure to submit the required coaching documentation. White instructed her to submit all past due coaching documentation by Friday, December 4, 2020. Richmond never submitted them. ROA.447-454, 412, 400-401. The same day Richmond was issued a written warning, Messmer received a "response" to the written warning from Richmond on December 2, 2020, in which Richmond indicated her disagreement with TeamOne's safety policies and disciplinary

approach, as they "negatively impact my operation," and that she had been repeatedly "overruled and ignored" when she voiced her concern about the disciplinary approach and required documentation. ROA.331-335.

On March 4, 2021, White sent an e-mail to on-site managers and supervisors concerning the scheduling of required quarterly safety meetings. ROA.494-495, 412. Richmond was not in the Freeport office that day, but Zavala, her transportation supervisor, responded to White and asked whether Richmond had provided a tentative date for the Freeport safety meeting. ROA.412, 494. White indicated that Richmond had not, and informed Zavela that the quarterly safety meeting would need to be conducted before the end of March along with the monthly "CHSP" meeting. ROA.492-493, 413. White also inquired about the documentation from the January and February CHSP meetings because she had not received them. Zavala's response was, "What is the CHSP meeting?" Id.

Richmond was required to also forward safety meeting and observation reports to Whisman, so White reached out to him to obtain copies of the January and February CHSP Safety Meeting Agendas as well as the driver observation reports submitted by Richmond. ROA.413, 496-502. White forwarded these to Zavela and explained that CHSP Safety Meetings were required monthly meetings led by the drivers wherein safety issues were discussed. She also referenced the driver observation reports which indicated that Zavala had conducted driver

observations in January and February.   ROA.282-286, 413, 496-502.   Zavala

informed White that she had never conducted any driver safety observations, was

not familiar with the documents, and did not administer any corrective action as

indicated on the driver observation reports. ROA.413, 126, 496-502.   Thereafter,

White reported her conversation with Zavala to Messmer, who initiated an

investigation to determine whether safety documentation had been falsified.

ROA.413, 401.

**E.    The Investigation**

On the morning of March 5, 2021, White received an e-mail from Zavala

explaining that the January 22, 2021, CHSP Safety Meeting Agenda was "created

based off of a meeting held at my request to address issues we were encountering

with multiple drivers. The 2/23 meeting **never** took place.  Since Vera's departure

we have NEVER held a formal CHSP meeting." (Emphasis in original). ROA.496-

502, 413-414. Zavala also expressed concern regarding Richmond's sporadic

attendance at work, as well as previous requests to submit false statements

concerning drivers, and instructions not to answer calls from Human Resources or

anyone at the corporate office. She informed White that she and Administrative

Assistant Amanda McElveen were available that morning to discuss the issues

further. ROA.496-502, 414. Shortly thereafter, Messmer, White, and Julio

Gonzalez (Sr. Client Services Manager) had a conference call with Zavala and

McElveen regarding the concerns which had been communicated by Zavala in her earlier e-mail to White. ROA.414, 401, 503-508.   Both Zavala and McElveen reported numerous issues regarding Richmond's work, including, but not limited to, her sporadic attendance, fraudulent documentation of safety meetings and driver training, and attempts by Richmond to have Zavala and McElveen falsify paperwork so that a trainer would be paid for work which was never performed. ROA.262-266, 414, 401, 503-508.

While driver observations for January and February were reported as being observed by Zavala, she told Messmer, as she had previously informed White, that she had never conducted any driver safety observations, was not familiar with the documents, and did not administer any corrective action as indicated on the driver observation reports.   ROA.503-508, 414, 401-402.   Zavala was also asked about the Safety Committee Meeting reports which indicated that the January 2021 CHSP meeting had been conducted on January 22, 2021, and that the February 2021 meeting was conducted on February 26, 2021.   Zavala stated that there was a meeting on January 22, but that safety matters were not discussed. Richmond, however, had documented it as a safety meeting. ROA.262-266**,** 414-415, 402, 503-508.   Zavala stated that contrary to the documentation concerning a February 26, 2021 meeting, no such meeting took place and that the "trip sheets" for the drivers would indicate whether they were in attendance. ROA.293-303, 415, 402,

503-508.

Messmer, White, and Gonzalez also met with TeamOne driver Rickey Fisher, who was listed as the Non-Management Co-Chair present at the January and February 2021 CHSP Safety Committee Meetings. ROA.503-508, 415, 402. Fisher confirmed that he had not participated in any safety meetings since the last manager left TeamOne more than two (2) years prior. Id. Fisher was also shown the documented observations for January and February 2021 and asked if there were any conversations with him concerning the observations reported on 1/18/2021, 2/2/2021, and 2/24/2021. Fisher stated that neither Richmond, nor anyone else, spoke to him about any of the listed observations. Id.

Messmer and White also spoke with driver James Shepperd who had no recollection of attending any CHSP meetings or being given a verbal warning by Richmond on January 11, 2021, as indicated on the January driver observation report submitted by Richmond. ROA.503-508, 415, 402. A review of the "trip sheets" for the drivers listed as in attendance at the February 26, 2021, CHSP Safety Committee Meeting were reviewed, and it was confirmed that all of those listed were on routes making deliveries and had not attended a safety meeting. ROA.293-303, 480-490, 503-508, 415-416, 403.

### F.     **March 10, 2021, Meeting with Richmond**

On March 10, 2021, Messmer and Curtis Fitts (Talent Manager) met with

Richmond and requested to review supporting documentation which was required to be maintained concerning driver observations and mandatory safety meetings. ROA.403, 503-508.  Richmond indicated that she did not keep any documentation associated with the driver observations she conducted. Id.  Richmond also reported that she did not use the designated form that she was instructed to use by TeamOne Corporate Safety. Id.  She explained that she was the only management employee who conducted driver observations for the Freeport facility, which was contrary to the reports she submitted indicating that Zavala had conducted several driver observations in each month and contrary to TeamOne's policy which required that both Operations Managers and site supervisors conduct weekly driver observations. Id.

As for the monthly safety meetings, Richmond stated that she did not keep any documentation concerning those meetings, which was contrary to the Safety Meeting and Agenda Minute reports submitted by her to Whisman at UPS. ROA.403, 503-508.


Messmer informed Richmond that he was removing her from service based on her falsification of safety records and failure to maintain supporting documentation for observations and safety meetings. ROA.404, 503-508. Thereafter, Messmer and White conferred, and the decision was made to terminate

Richmond's employment. ROA.404, 416.    Richmond's employment was terminated effective March 12, 2021, for falsification of safety records and failure to maintain supporting documentation for observations and safety meetings. ROA.112, 416, 402, 503-508.

## SUMMARY OF THE ARGUMENT

Based on the record before it, the District Court properly granted TeamOne's motion for summary judgment on the claims alleged by Richmond. The District Court did not rule *sua sponte*. Richmond had a full opportunity to offer evidence in opposition to the grounds on which the District Court ruled. The District Court's granting of summary judgment was proper because Richmond failed to present a prima facie case, specifically failing to produce any evidence that she was replaced by a non-pregnant employee or of a proper comparator.

Assuming *arguendo* that Richmond could establish a prima facie case of discrimination, the District Court correctly held that TeamOne articulated a legitimate, non-discriminatory reason for terminating Richmond's employment – poor performance due to falsification of safety records and failure to maintain required documentation. Richmond failed to rebut TeamOne's reason. As noted by the District Court, it is undisputed that reports were received from Richmond's subordinates that Richmond was falsifying safety documentation. Richmond did not dispute that there were allegations of her forging safety documentation; that interviews were conducted by Messmer and White with Richmond's subordinates; and that drivers substantiated the reports that Richmond was, in fact, falsifying

safety documentation.[1]  Nor did Richmond argue that TeamOne's reliance on its independent investigation in determining that Richmond had falsified safety documentation was unreasonable. Richmond failed to rebut TeamOne's legitimate, non-discriminatory reasons for her termination of employment.  Therefore, the District Court properly granted summary judgment, which is due to be affirmed.

---

[1] In her appellate brief, Richmond argues for the first time that "Fisher's Assertions to TeamOne are Heavily Disputed."  Appellant's Brief at p. 43.  Assuming the materiality of such facts are even relevant to the legal analysis, they were not brought to the attention of the District Court. Reversal on this basis is thus improper because that court was not required to review the entire summary-judgment record to search for fact disputes supporting Richmond's opposition to TeamOne's summary-judgment motion. Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998); see United States v. del Carpio Frescas, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) ("Judges are not like pigs, hunting for truffles buried in the record." (quoting Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys., 309 F.3d 433, 436 (7th Cir. 2002))). It is improper for Richmond to use her briefs in this forum as a substitute memorandum in opposition to TeamOne's motion for summary judgment below.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT TEAMONE DID NOT DISCRIMINATE AGAINST RICHMOND BASED ON HER PREGNANCY

### A. The Pregnancy Discrimination Act

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k), amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination. Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859 (5th Cir. 2002); see also Carmona v. DeJoy, No. 22-20064, 2022 WL 16836978, at *1 (5th Cir. Nov. 9, 2022) (quoting 42 U.S.C. § 2000e(k)) (stating that the PDA requires that pregnant women "be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work"). A claim brought under the PDA is analyzed like any other Title VII discrimination claim. Fairchild v. All American Check Cashing, Inc., 815 F.3d 959, 966 (5th Cir. 2016). "[L]iability in a disparate treatment case depends on whether the protected trait actually motivated the employer's decision." Young v. United Parcel Service,

Inc., 135 S.Ct. 1338, 1345 (2015), citing, Raytheon Co. v. Hernandez, 540 U.S. 44, 52, 124 S.Ct. 513 (2003).

However, it is "well-established that a pregnant employee is only entitled to be treated as well as other non-pregnant employees, not better. Gotch v. Neustrom, 2013 WL 312372 (W.D. La. 2013). Consequently, to ultimately prove unlawful pregnancy discrimination, Richmond must demonstrate that "the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

### B.     Burden-Shifting in Title VII Discrimination Case

When based on circumstantial evidence, as here, claims are analyzed under the burden-shifting approach outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Carmona, 2022 WL 16836978, at *1. The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case of gender/pregnancy discrimination, which requires Richmond to produce evidence showing that she: (1) was a member of a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.  Carmona, 2022 WL 16836978, at *1 (quoting Morris v. Town of Indep., 827 F.3d 396, 400 (5th Cir.

2016)).

The defendant must respond by "articulat[ing] a legitimate, non-discriminatory reason for the adverse employment action[,]" and, if the defendant does so, "the inference of discrimination disappears, and the plaintiff must present evidence that the employer's proffered reason was mere pretext for... discrimination." *Morris,* 827 F.3d at 400 (quoting <u>Davis v. Dail. Area Rapid Transit</u>, 383 F.3d 309, 317 (5th Cir. 2004)).

### C.    <u>The District Court Correctly Determined That Appellant Failed To Make Out A Prima Facie Case of Pregnancy Discrimination</u>

The granting of summary judgment dismissing Richmond's pregnancy discrimination claims was proper, as Richmond could raise no genuine issue of material fact regarding the essential elements of pregnancy discrimination, and therefore could not establish a prima face case. While it was undisputed that Richmond was pregnant, was qualified under Title VII for her position, and was terminated, she failed to produce any evidence demonstrating that she was replaced by a non-pregnant employee or that she was treated less favorably than similarly situated employees who were not pregnant.

### 1.    There is no evidence that a non-pregnant employee replaced Richmond.

Richmond asserts that she established a prima facie case of pregnancy discrimination by producing evidence demonstrating that she replaced by a non-

pregnant employee, Jennifer Zavala. Appellant's Brief at p. 28. Richmond cites her Complaint and Defendant's Answer in support of her assertion that "Zavala, a non-pregnant employee, replaced Richmond." ROA. 642; ROA. 688. <u>Id.</u> The evidence cited by Richmond, however, only supports that Richmond was replaced by Zavala. There is no evidence cited, nor is there any evidence within the record, of Zavala's pregnancy status. Therefore, Richmond failed to prove that she was replaced by a non-pregnant employee.

## 2. Bruce Pate is not a proper comparator.

Richmond also assets that she established a prima facie case of disparate treatment pregnancy discrimination. To establish disparate treatment, Richmond must produce evidence showing that TeamOne treated her "more harshly than 'similarly situated' employees for 'nearly identical' actions." <u>Vincent v. Coll. of the Mainland</u>, 703 F. App'x 233, 238 (5th Cir. 2017). In other words, Richmond must identify at least one coworker outside her protected class who held the same job or job responsibilities, shared the same supervisor, or had her employment status determined by the same person. <u>See Alkhawaldeh v. Dow Chem. Co.</u>, 851 F.3d 422, 426 (2017). The coworker identified as a comparator must have a history of similar violations or infringements to Richmond. <u>Id</u>.

Richmond asserts that she established a prima facie case of pregnancy

discrimination by producing evidence that she was treated less favorably than Bruce Pate, the Operations Manager assigned in Gulfport, Mississippi. Richmond, however, failed to produce any competent evidence that Pate committed similar violations to Richmond. Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017). Richmond alleges that Pate failed to use TeamOne's driver observation forms or submit hard brake documentation but was not disciplined or terminated. ROA.541, 548, 553. Richmond's only evidence, however, is based on hearsay in her own deposition. ROA.126 ("[w]e talked about it on the weekly safety phone calls."; ROA.123 ("Didn't submit anything, neither did Bruce. They can say that they did and what they would do is they'd get an e-mail that had a slap on the hand, they'd send one or two and then they would to on about their business."). Hearsay evidence is not considered on summary judgment motions. Fowler v. Smith, 68 F.3d 124, 126 (5th Cir.1995).

Richmond also asserts that any comparator analysis "should be focused on the sole infraction of not using TeamOne's requested driver observation form because that is the only infractions that she and Pate both committed."[2] ROA.706. Again, fatal to this assertion is that Richmond presented no competent evidence upon which she could rely that Pate failed to use TeamOne's driver observation

---

[2] Richmond's assertion that she did not falsify safety documentation because Gerald Whisman, a UPS employee, instructed her to complete documentation that Zavala made driver observations when Richmond knew Zavala had not, is not only hearsay and not competent evidence, but irrelevant because UPS was not Richmond's employer. ROA.92-93.

forms. Furthermore, Richmond's reliance on <u>Watkins v. Tregre</u>, 997 F.3d 275 (5th Cir. 2021) is misplaced as the facts are clearly distinguishable from those in this case. In <u>Watkins</u>, there was competent evidence of a similarly situated comparator. <u>Id</u> at 282 ("Watkins marshals competent summary-judgment evidence, i.e., Sheriff Tregre's deposition testimony, showing that Joe Oubre, a similarly situated white male employee, was treated more favorably. Oubre was "counseled"—not fired—for sleeping on the job.").[3]

There is nothing in the record that suggests that Pate engaged in any misconduct, much less any misconduct comparable in degree or kind to Richmond's misconduct, or that any such misconduct had been reported. ROA.127. In fact, Richmond admits that she is unaware of any complaint made against Pate by anyone, including his subordinates, concerning falsification of safety documents. <u>Id.</u> Therefore, Richmond and Pate are not similarly situated.

## II.     RICHMOND FAILED TO REBUT TEAMONE'S LEGITIMATE NON-DISCRIMINATORY REASON FOR HER TERMINATION

Assuming, *arguendo,* that Richmond alleged a *prima facie* case of discrimination, TeamOne has a legitimate, nondiscriminatory reason for the termination of her employment. TeamOne's burden to articulate a legitimate,

---

[3] <u>Watkins v. Tregre</u>, 997 F.3d 275 (5th Cir. 2021) involved claims for race discrimination under Title VII and retaliatory discharge under the Family Medical Leave Act (FMLA).

nondiscriminatory reason for Richmond's termination is one of production, not persuasion; it 'can involve no credibility assessment.' Brockie v. Ameripath, Inc., 2007 WL 1187984, at *11 (N.D. Tex. Apr. 23, 2007), aff'd, 273 F. App'x 375 (5th Cir. 2008), citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Upon receiving reports from Richmond's subordinates that she was falsifying safety documentation, a thorough investigation was conducted, which confirmed that Richmond was falsifying safety documentation. As a result, TeamOne terminated her for falsification of records which is a severe offense under TeamOne's Disciplinary Policy. Thus, TeamOne had a compelling, universally accepted, and legitimate reason for terminating Richmond's employment. It is well-settled that terminating an employee for performance is a legitimate, nondiscriminatory reason that shifts the burden back to the plaintiff to prove pretext. See Lemaire v. La. Dept. of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007) (job performance is a legitimate, nondiscriminatory reason for termination). Richmond must show that TeamOne was, in fact, motivated by discriminatory animus based on her pregnancy. This she cannot do.

Richmond cannot and does not dispute that there were allegations of her forging safety documentation, and that interviews conducted by Messmer and White with Richmond's subordinates and drivers substantiated the reports that

Richmond was, in fact, falsifying safety documentation. Incredibly, Richmond claims that she was instructed to do so by Whisman, a UPS employee. ROA.106. Assuming that is true, which TeamOne denies, Richmond was aware that she was a TeamOne employee, not employed by UPS. Id. Whisman could not hire or fire Richmond. Id. Richmond was provided an employee handbook from TeamOne, not UPS. TeamOne set policy that Richmond was to follow, and the TeamOne handbook apprised Richmond of employee conduct and policies.  ROA.121, 123. Richmond reported directly to Patsy White, TeamOne's Director of Safety and Compliance concerning safety related matters and had been reminded by the TeamOne COO that she was to follow the instructions provided to her by White. ROA.145, 395.

    As for utilizing TeamOne's driver observation forms, Richmond does not dispute that she did not utilize them but claims that she was never instructed to do so. Richmond's claim, however, is contradicted by contemporaneous documentation dating back to March 2020 in e-mails exchanged between her and White in which White specifically informed Richmond that she was to utilize TeamOne's driver observation form and provided a copy to her. ROA.125, 267-281; 411.

    In short, Richmond argues that the timing of her discipline and termination is evidence that she was terminated because of her pregnancy – that she had been

on the "naughty list" due to her failure to provide required documentation to TeamOne since she was hired, but that it was not until she informed TeamOne that she would not work through her maternity leave that she was written up and fired. ROA.144.

As to the write-up, the evidence shows that TeamOne began tracking hard brakes in March 2020. For several months, Richmond was repeatedly reminded to submit the required documentation. Richmond testified that she disagreed with TeamOne's policy with regard to this documentation; that she did not believe it was "logical, reasonable, or feasible;" and that the documentation TeamOne required "was not acceptable in my mind." ROA.122-123. In short, she testified that she informed TeamOne, "I'm giving you what's valid." ROA.144. Richmond was written up after UPS informed White of safety issues, and when she reported the information to Messmer and Hudson, Hudson advised that it was time to "take it to the next level." ROA.431-433; 411-412; 400. It was Richmond's repeated refusal which caused her to be given a written warning. It had nothing to do with her pregnancy.

As for the falsification of documents, the issue was brought to the attention of management by Richmond's own subordinates. An independent investigation was done which confirmed that Richmond was falsifying safety documentation. There is no evidence this had anything to do with her pregnancy.

Furthermore, evidence of conduct by Hudson and Messmer is contrary to Richmond's assertion that she was terminated because she had stated she would be taking maternity leave. Richmond testified that prior to being issued the written warning in December 2020, but after she had informed TeamOne of her pregnancy, she was required to terminate a driver she had hired because he did not meet the minimum qualifications of one year of driving experience. She became very upset because the driver had already given his notice to his previous job, and no wavier of the requirement would be issued by TeamOne. Richmond testified as follows with regard to a telephone call she received from Messmer thereafter:

> And so I wrote that young man a letter of recommendation. I brought him into my desk and said, hey, this isn't fair, but this is how it is. He accepted it and he went on. And then the next day or the next week, <u>Mark called me, and he said, am I going to lose you over this?</u> And I said, right now, no. I said, but it lets me know what people's priorities are and long term, I don't see myself staying here. But I'm pregnant, I'm not going anywhere right now. I can't. My plan for the next couple of years, I'm here. But yes, it lets me know who I'm working for. And I did not like that picture. But that was done in a phone call to Mark where he actually called me because he was concerned he was going to have to start shopping for the position.

ROA.143. Such is not the conduct of an individual with the intent to terminate an employee due to her pregnancy.

In addition, <u>just one month prior to Richmond's termination</u>, Joseph Clevenger, a UPS driver trainer, advised Richmond and the TeamOne Safety Department via e-mail of an "egregious HOS violation" by a driver supervised by

Richmond and suggested additional driver training was needed due to repeated mistakes and driver errors. Richmond was out of the office. White reported the issue to Hudson and Messmer, stating that Zavala had assisted with the issue in Richmond's absence, but that Zavala had indicated that training at the Freeport facility was "little to non-existent down there for new drivers." ROA.470-477. Hudson responded:

> Keep it constructive with Lauralee. There is a problem so how do we fix it. Mark you may want her to detail to you how she will ensure this doesn't happen going forward and plan to get Jennifer trained. It's a great time to get Jennifer up to speed on all things she doesn't know before Lauralee is out.

Id. Again, such is not the conduct of an individual or company with the intent of terminating a pregnant employee. Furthermore, it is apparent that preparations were being made for additional training of Zavala in anticipation of Richmond taking maternity leave.

Richmond alleges that information provided by Zavela and other employees during the investigation were "lies." ROA.133; Appellate Brief at pp. 44-45. Even if the information provided to TeamOne was incorrect, TeamOne had a good faith belief based upon what was presented during the investigation that Richmond had falsified safety documentation.[4] Under well-established law, the Court does not

---

[4] In her appellate brief, Richmond, for the first time, identifies testimony from her own deposition that she claims creates a "swearing match" as it relates to her falsification of safety documentation. Appellant's Brief at p. 45. Again, assuming the materiality of such facts are

substitute its judgment for the employers. The Fifth Circuit has long made clear, "[w]e do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue." Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991), citing, De Anda v. St. Joseph Hosp., 671 F.2d 850, 854 n. 6 (5th Cir. 1982). Poor work performance is a legitimate, nondiscriminatory reason for discharge. Perez v. Region 20 Education Service Center, 307 F.3d 318, 326 (5th Cir. 2002). The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

Further, the Fifth Circuit has "previously emphasized that 'discrimination laws [are not] vehicles for judicial second-guessing of business decisions.'" Deines v. Texas Dept. of Protective and Regulatory Services, 164 F.3d 277, 281 (5th Cir. 1999), citing, Walton v. Bisco Industries, Inc., 119 F.3d 368, 372 (5th Cir. 1993). See also, Jackson v. Watkins, 619 F.3d 463 n. 5 (5th Cir. 2010) ("it is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination."); Crivelli v. Montgomery Cnty. Emergency

---

even relevant to the legal analysis, they were not brought to the attention of the District Court, and it is improper for Richmond to use her briefs in this forum as a substitute memorandum in opposition to TeamOne's motion for summary judgment below. Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998); see United States v. del Carpio Frescas, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) ("Judges are not like pigs, hunting for truffles buried in the record." (quoting Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys., 309 F.3d 433, 436 (7th Cir. 2002))).

Servs. Dist. No. 7, No. 22-20312, 2023 WL 2823065, at *2 (5th Cir. Apr. 7, 2023) ("This court thus has no grounds to indulge in judicial second guessing of [appellant's] business decisions.").

Moreover, the existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification. Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991).

Title VII is not intended to protect employees from erroneous or arbitrary employment decisions or difficult places to work. It only intended to protect employees from employment decisions that are *motivated by discrimination.* See Kraft v. Univ. of Tex. Med. Branch, 775 F. App'x 159, 161 (5th Cir. 2019); Roberson-King v. La. Workforce Comm'n, 904 F.3d 377, 381 (5th Cir. 2018) (quoting LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007)) ("[T]he court does not engage in second-guessing of an employer's business decisions."). TeamOne met its burden of producing a legitimate non-discriminatory reason for Richmond's discharge. Richmond failed to present any competent evidence that her discharge was improperly motivated by her pregnancy. Accordingly, summary judgment was warranted and should be affirmed.

## <u>CONCLUSION AND PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Appellee respectfully prays that the District Court's ruling be affirmed.

Respectfully submitted,


*/s/ Hunter Johnson*
**HUNTER JOHNSON**
Texas State Bar No. 10753900
hjohnson@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
1201 Elm Street, Suite 2550
Dallas, Texas 75270
(214) 646-8625
(972) 865-4791[Facsimile]

**ATTORNEY FOR APPELLEE**

## <u>CERTIFICATE OF COMPLIANCE WITH FEDERAL RULES</u>

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and 5th Cir. R. 32.1, this brief contains 6405 words.

2. This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type style requirement of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365, 14-point Times New Roman typeface.


*/s/ Hunter Johnson*
**HUNTER JOHNSON**

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users and will be served by the appellate CM/ECF system:

Ahad Khan
712 Main Street, Suite 900
Houston, Texas 77002
Tel. (713) 401-3558
ak@ahadkhanlaw.com

*/s/ Hunter Johnson*
**HUNTER JOHNSON**