# No. 24-40815

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Lauralee Richmond,

Plaintiff - Appellant

v.

Team One Contract Services, L.L.C., doing business as TeamOne Logistics,

Defendant - Appellee

**On Appeal from**
United States District Court for the Southern District of Texas

3:22-CV-282

**REPLY BRIEF OF APPELLANT LAURALEE RICHMOND**

SUBMITTED BY:

Ahad Khan
Texas Bar No. 24092624
712 Main Street, Suite 900
Houston, TX 77002
713-401-3558 – Telephone
ak@ahadkhanlaw.com - Email

## TABLE OF CONTENTS

Contents                                                                                                           Page(s)

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES............................................................................1

ARGUMENT ...................................................................................................2

1. The District Court Did Not Conclude Richmond Failed to Make a Prima Facie Case……………………………………………………………………………...2

2. TeamOne's Investigation Was Not Independent; It Was Led By Messmer…………………………………………………………………………2

3. Richmond Presented Evidence Her Termination Was Motivated by Her Pregnancy…………………………………………………………………………….3

4. There Is a Fact Issue on Whether Richmond's Performance Warranted Termination……………………………………………………………………..6

5. There Is a Fact Issue on Whether UPS Jointly Employed Richmond…………..6

6. Clevenger, a UPS Employee, Did Not Cause Richmond's Termination………..8

7. Evaluation of Messmer's Conduct and Motives Require a Credibility Assessment from a Jury……………………………………………………………………9

CONCLUSION ...............................................................................................11

CERTIFICATE OF SERVICE.......................................................................12

CERTIFICATE OF COMPLIANCE .............................................................13

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………….……..**Page(s)**

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015)…………….6

*Dabassi v. Motiva Enters.*, 107 F.4th 500 (5th Cir. 2024)…………………………10

*Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117 (5th Cir. 1993)………6

*Donaldson v. CDB Inc.*, 335 Fed. Appx. 494 (5th Cir. 2009)……………………..11

*Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017 (5th Cir. 1990)………………6

*Furnco Constr. Corp. v. Waters*, 438 U.S 567 (1978)…………………………….10

*Harris v. FedEx Corp. Servs., Inc.*, 92 F. 4th, 286 (5th Cir. 2024)…………...…… 9

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016)…………………7

*Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010)………………..10

*Little v. Republic Refining Co., Ltd.*, 924 F.2d 93 (5th Cir. 1991)………………….9

*Starnes v. Wallace*, 849 F.3d 627 (5th Cir. 2017)…………………………………11

*Tolan v. Cotton*, 572 U.S. 650 (2014)……………………………………………..10

# ARGUMENT

1. **The District Court Did Not Conclude Richmond Failed to Make a Prima Facie Case**

Appellee TeamOne Contract Services, L.L.C. ("TeamOne") argues the district court correctly determined that Appellant Lauralee Richmond ("Richmond") failed to make a prima facie case of pregnancy discrimination. TeamOne Brief at 20. However, the district court did not reach this conclusion. Instead, the district opined that it need not address the issue as Richmond's claim fails because she has not rebutted TeamOne's nondiscriminatory reasons for her termination. ROA.721.

However, Richmond did rebut TeamOne's reasons, including demonstrating she was a top performer, she built an award-winning safety record, she completed required documentation, she held safety meetings, and her termination was improperly motivated by her pregnancy. *See* Richmond Brief at 36-52.

2. **TeamOne's Investigation Was Not Independent; It Was Led By Messmer**

TeamOne also contends it conducted an "independent investigation" into Richmond. TeamOne Brief at p. 26. TeamOne's investigation was not independent. It was not conducted by an independent organization, such as an outside law firm or third-party investigator. Instead, Messmer, who harbored discriminatory animus against Richmond, drove the investigation and made the decision to terminate. *See* Richmond's Brief at 40-43; ROA.403 (Messmer testifying "I initiated an

investigation to determine whether safety documentation had been falsified"); ROA.404 ("I informed Ms. Richmond that I was removing her from service"), ("Based on the investigation, I believed termination of Ms. Richmond's employment was warranted based upon her conduct.").

### 3. Richmond Presented Evidence Her Termination Was Motivated by Her Pregnancy

TeamOne concludes "Richmond failed to present any competent evidence that her discharge was improperly motivated by her pregnancy." TeamOne Brief at 30. Richmond presents this evidence. *See* Richmond Brief at 14-21, 40-43.

Soon after learning she was pregnant in October 2020, Richmond informed Messmer of her intent to take her full allotment of FMLA leave and use her accrued vacation time. ROA.659. There is no evidence Messmer ever responded to this email. Going forward, Messmer consistently refused to address the topic of Richmond's maternity leave in writing, a suspicious move by a human resources professional. ROA.579-580.

In November 2020, Richmond again discussed her upcoming maternity leave with Messmer. ROA.670. Richmond knew by this point that her pregnancy was high risk and would require a C-section. ROA.573.

The topic of working from home versus taking maternity leave became a sore subject between Richmond and Messmer. ROA.573. As Richmond explained,

3

"Messmer certainly expected me to work through my maternity leave and he was quite put out with me." ROA.580.

Messmer suggested to Richmond she could work from home post-surgery with her newborn, which would essentially cause her to forgo maternity leave altogether. ROA.670. When Richmond declined forgoing maternity leave, Messmer suggested she would simply be doing the same thing she did when she contracted COVID-19 and added she would not have to be taken off payroll. ROA.573. Richmond countered that having COVID-19 and working from home was "a bit different than having major surgery and a C-section to remove a living human from you." ROA.573. At the crescendo of this back-and-forth, Richmond flatly refused to work through her maternity leave. ROA.573.

The events that followed are encapsulated by Richmond: "Shortly after that, I had been written up. And before you could blink, I was fired." ROA.573.

The same day she was written up, Richmond noted the connection between the timing of the write-up and her disagreements with Messmer concerning her election to maximize her FMLA leave: "It also does not escape my notice that these measures have arisen after I notified Human Resources of my pregnancy and that I intended to take my full FMLA leave." ROA.677-678.

On December 9, 2020, Richmond emailed Messmer again to inform him that after further consideration, she continued to find his idea that she could simply work from home right after giving birth infeasible "and not something [she was] willing to attempt to do." ROA.670.

Messmer responded late that night at 11:02 PM and suggested setting up a time to discuss Richmond's leave of absence the following day, before adding that he and White would also be discussing "outstanding safety matters" with Richmond the next day, foreshadowing her eventual termination. ROA.670.

On February 23, 2021, Richmond sent yet another email to Messmer about her maternity leave. ROA.681. Messmer again declined to respond in writing. However, Messmer expressed in a phone call to Richmond that her concern about TeamOne's negative change in treatment after notification of her plan to take full FMLA leave was "ludicrous and not worthy of discussion." ROA.579-581; ROA.589-590; ROA.683.

A factfinder can disagree with Messmer's assessment and find that Richmond's election to take her full allotment of FMLA leave for her pregnancy and her decision to not work from home post-partum motivated her termination a few weeks later.

### 4. There Is a Fact Issue on Whether Richmond's Performance Warranted Termination

TeamOne argues that Richmond's termination was for "performance" but this justification is inherently unworthy of credence. TeamOne Brief at 16. Objective facts demonstrate Richmond's positive performance. Under Richmond's leadership, the Freeport terminal completed a sweeping turnaround in its safety record, was ranked number one out of seventeen terminals in its class, and won the national title for UPS's "Operation of the Year." ROA.574; ROA.649; ROA.667; ROA.695.

### 5. There Is a Fact Issue on Whether UPS Jointly Employed Richmond

TeamOne also argues that it is "incredibl[e]" that Richmond relies on Whisman's approval of her performance and practices to defend her record. TeamOne's Brief at 25. TeamOne adds that Richmond was not employed by UPS and Whisman could not hire or fire her; however, both points are in dispute. *Id.*

An employee can have joint employers under the "hybrid economic realities/common law control test." *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117 118-19 (5th Cir. 1993) (quoting *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990)); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227-28 (5th Cir. 2015). One employer may "control an employee's conduct" while another employer may pay salary, withhold taxes, provide benefits, and set the terms and conditions of employment. *Burton*, 298 F.3d at 227.

6

A genuine issue of material fact can exist on the question of who supervised the employee. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 238 (5th Cir. 2016) (finding genuine issue of material fact on who is plaintiff-appellant's supervisor).

Here, UPS clearly controlled Richmond's conduct. As a preliminary matter, Richmond's email address [lauraleerichmond@ups.com] indicates she worked for UPS. ROA.649. Indeed, it is highly unusual that an employee would be given an organizational email address for an employer she does not work for.

Moreover, Richmond provided fleet services for UPS in support of UPS's client, Chiquita. ROA.565; ROA.637. Richmond interviewed with UPS Regional Director Whisman, who flew in and spoke with Richmond for close to an hour in-person, before she landed the job. ROA.564; ROA.568-570. Only after interviewing with UPS did Richmond participate in a brief phone interview with Messmer. ROA.570. The call with Messmer "was more of a formality" – Richmond had aced the interview with UPS as Messmer let Richmond know that Whisman "couldn't stop talking about [her]." ROA.570.

Whisman controlled Richmond's day-to-day activities. ROA.561; ROA.578. Richmond used her UPS email address to communicate with both UPS and TeamOne. ROA.649. While Richmond might only talk once a week with White during a weekly scheduled safety call and even more sporadically with Messmer,

7

she exchanged daily emails and phone calls with Whisman in addition to sending most of her documentation to him. ROA.565-566.

This is important because Whisman was not consulted in the decision to terminate Richmond. In fact, Whisman was totally in the dark as to what transpired. ROA.608-609. He became upset upon hearing the news of Richmond's separation, employed "some pretty colorful language," and was adamant that he had not approved the action taken against Richmond, even going so far as to say that TeamOne "did not have permission to fire" her. ROA.608.

### 6. Clevenger, a UPS Employee, Did Not Cause Richmond's Termination

With respect to the issue of whether UPS controlled Richmond's employment, TeamOne tries to have it both ways. TeamOne again references a communication by Joseph Clevenger ("Clevenger"), a UPS rather than TeamOne employee, expressing dissatisfaction about a Freeport terminal driver's conduct. TeamOne Brief at 27-28. Clevenger was not cited as a reason for the termination in any contemporaneous documentation explaining the reasons for TeamOne's termination. ROA.287-292.

### 7. Evaluation of Messmer's Conduct and Motives Require a Credibility Assessment from a Jury

TeamOne argues that Messmer's call to Richmond after becoming aware of her pregnancy, in which he asked if he would lose her after a disagreement about another employee, "is not the conduct of an individual with the intent to terminate an employee due to her pregnancy." TeamOne Brief at 27. Even if the evidence did support this assertion, evaluating Messmer's conduct requires a credibility assessment, which is in the province of the jury.

The trial court on summary judgment should not "wade into making credibility determinations, weighing the evidence, and drawing inferences." *Harris v. FedEx Corp. Servs., Inc.*, 92 F. 4th, 286, 298 (5th Cir. 2024). This is the province of the jury. *Id.*

TeamOne also argues that "the existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." TeamOne Brief at 30 (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). However, if a jury can examine competing evidence about the correctness of an underlying fact and reach a different conclusion about what truly motivated an employer's decision, the case is inappropriate for summary judgment.

The evidence in this case suggests that different folks can draw different conclusions as to why Richmond was terminated and whether TeamOne's justifications are genuine. This underscores why summary judgment is improper—reasonable minds can differ.

A summary judgment predicated on facts genuinely in dispute is improper. "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). In weighing the evidence, the court necessarily substitutes its judgment of the evidence for that of the jury. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (holding that court displayed a "clear misapprehension of summary judgment standards" when it credited the version of events from the witness of the summary judgment movant, while failing to credit the plaintiff's own recollection of events).

Moreover, it is important to look at the facts in this case in their entirety when deciding on pretext. As this Court recently reasoned in an employment case, "[i]t is necessary for the facts allegedly supporting a claim to be evaluated in their entirety." *Dabassi v. Motiva Enters.*, 107 F.4th 500, 506 (5th Cir. 2024). A *McDonnell Douglas* discrimination analysis "was never intended to be rigid, mechanized, or ritualistic." *Id.* (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S 567, 577 (1978)).

Instead, "[j]ust as '[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, . . . similarly, a discrimination analysis

must concentrate not on individual incidents, but on the overall scenario.'" *Donaldson v. CDB Inc.*, 335 Fed. Appx. 494, 503 (5th Cir. 2009) (citations omitted); s*ee also Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) (reversing summary judgment for the employer in an employment case and emphasizing the importance of looking at the "big picture" in analyzing whether there is sufficient evidence of pretext to find for the plaintiff).

The big picture demonstrates that a genuine issue of fact exists on whether TeamOne's termination of Richmond was impermissibly motivated by her pregnancy. TeamOne is not entitled to a judgment as a matter of law.

## CONCLUSION

Summary judgment is a vehicle to dispose of cases in which application of the law is relatively clear and the facts are relatively one-sided. This is not such a case. Richmond asks this Court to vacate the summary judgment granted against her and remand this case to the district court for trial or further proceedings consistent with its Opinion.


Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
712 Main Street, Suite 900
Houston, TX 77002
713-401-3558 – Telephone
ak@ahadkhanlaw.com - Email

# CERTIFICATE OF SERVICE

I certify that on April 9, 2025, the foregoing document was filed with the United States Court of Appeals for the Fifth Circuit and served electronically via the ECF filing system upon counsel of record listed below:

Hunter Johnson
Tammy C. Woolley
Constangy, Brooks, Smith & Prophete, LLP
1201 Elm Street, Suite 2550
Dallas, TX 75270

/s/ Ahad Khan
Ahad Khan
Counsel for Plaintiff-Appellant

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, because this document contains 2,040 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.93 with a 14-point font named Times New Roman.

/s/ Ahad Khan  
Ahad Khan  
Counsel for Plaintiff-Appellant